UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMANTHA TATE,

                Plaintiff,                Civil Action No. 17-cv-13851

        v.                      District Judge Nancy G. Edmunds

COMMISSIONER OF               Magistrate Judge Mona K. Majzoub
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Samantha Tate seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that she is not entitled to benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 17). This matter has been referred to the undersigned for determination of all non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

## I.    RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, and that the case be dismissed in its entirety.

## II.      PROCEDURAL HISTORY

On October 3, 2012, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that she has been disabled since April 30, 2009. (TR 283–93.)  The Social Security Administration initially denied Plaintiff's claims on May 9, 2013.  (TR 145.)  On July 3, 2014, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge ("ALJ") Kevin W. Fallis.  (TR 40–70.)  On September 23, 2014, the ALJ issued an unfavorable decision on Plaintiff's claims.  (TR 145–55.)  However, on February 23, 2016, the Appeals Council issued an order remanding the case to the ALJ with instructions to consider "[n]ew and material evidence" regarding Plaintiff's mental impairments including records from "McLaren Regional Medical Center that show[] the claimant was admitted to a partial hospitalization program from July 22, 2014 through August 1, 2014, due to her bipolar disorder."  (TR 163–64.)  The Appeals Council directed the ALJ on remand to:

- Obtain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513). The additional evidence may include, if warranted and available, consultative and mental status examinations, and medical source statements about what the claimant can still do despite the impairments.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expect to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert

and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id*.)

On June 14, 2016, Plaintiff appeared for a second hearing before the ALJ. (TR 72–94.) On September 28, 2016, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 9–23.) Plaintiff requested a review of the ALJ's second decision with the Appeals Council, which was denied on September 29, 2017. (TR 1–3.) On November 29, 2017, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 15; docket no. 17.)

### III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of her medical issues. (Docket no. 15, pp. 3–16.) In addition, the ALJ summarized Plaintiff's medical record (TR 15–21), and Defendant adopted the ALJ's recitation of the facts (docket no. 17, p. 5). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also refer to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff met the insured-status requirements of the Social Security Act through June 30, 2016, and that she did not engage in substantial gainful activity since April 30, 2009, the alleged onset date. (TR 14.) The ALJ found that Plaintiff had the following severe impairments: "Asperger's disorder, borderline intellectual functioning, bipolar disorder, anxiety disorder and obesity." (*Id*.) Nevertheless, the ALJ concluded that Plaintiff did

3

not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (TR 15.)

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertion levels, with the following non-exertional limitations:

- No climbing ladders, ropes of scaffolds;

- Occasional climbing of ramps or stairs;

- Must avoid all use of hazardous moving machinery;

- Must avoid all exposure to unprotected heights;

- Limited to occupations which do not require complex written or verbal communication;

- Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decision and routine work place changes;

- Only occasional superficial interaction with coworkers, with no tandem tasks; and

- No interaction with the public.

(TR 16–21.)  On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that a person with Plaintiff's RFC could perform the requirements of representative occupations including packer (DOT: 737.587-018), inspector (DOT: 724.685-014), and laundry worker (DOT: 361.685-014).  (TR 22.)  Accordingly, the ALJ concluded that Plaintiff was not disabled from April 30, 2009 through January 30, 2016, the date last insured. (TR 23.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   Judicial review of the Commissioner's decisions is limited to determining

4

whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").  "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.      Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.      Analysis**

Plaintiff contends that ALJ's RFC determination is not supported by substantial evidence. (Docket no. 15, p. 17.)  Under this broad rubric, Plaintiff makes several particular arguments. First, Plaintiff asserts that the ALJ relied too heavily on a 2013 opinion from Dr. Matthew Dickson while failing to fully credit Dr. Dickson's follow-up opinion from 2016.  (*Id.* at 22–23.)

Next, Plaintiff alleges that the ALJ placed undue emphasis on a job that she performed prior to the alleged onset date. (*Id.* at 18–22.) Finally, Plaintiff argues that the ALJ erred by giving only little weight to the opinion of her therapist, Christina LaBond. (*Id.* at 23–24.) The undersigned will address these arguments in turn below.

### 1. *Dr. Dickson's Opinions*

Plaintiff asserts that the ALJ erred by relying on Dr. Dickson's 2013 opinion in support of the determination that she has only "moderate difficulties" in the areas of "concentration, persistence or pace." (Docket no. 15, pp. 19–20.) Plaintiff contends that this conclusion conflicts with Dr. Dickson's 2016 opinion, in which he observed that Plaintiff's "ability to sustain attention, concentrate, and exert mental control is in the borderline range." (*Id.* at 20.)

In his RFC analysis, the ALJ gave great weight to both of Dr. Dickson's opinions, clearly suggesting that he did not find them to be inconsistent. (TR 20.) Upon review of both opinions, the undersigned agrees.

On April 29, 2013, Dr. Dickson diagnosed Plaintiff with Asperger's disorder, bipolar disorder, and anxiety disorder, and opined that Plaintiff had moderately impaired abilities to: (1) understand, attend to, remember and carry out instructions, (2) respond appropriately to co-workers and supervision, and (3) adapt to change and stress in the workplace. (TR 18 (citing TR 768).)

Similarly, after an examination on July 19, 2016, Dr. Dickson opined that Plaintiff showed moderate limitations in her ability to: (1) understand, remember, carry out complex instructions, (2) make judgments on complex work-related decisions, (3) interact appropriately with supervisors and co-workers, and (4) respond to usual work situations and changes in the

work setting.  (TR 984–85.)   In addition, Dr. Dickson determined that Plaintiff's ability to interact with the public was markedly limited.  (*Id.*)

Turning to the source of the alleged inconsistency, in a separate section of the 2016 report, Dr. Dickson summarized Plaintiff's performance on "psychological testing" based on the Wechsler Adult Intelligence Scale-IV ("WAIS-IV").  In the context of this particular test, Dr. Dickson observed that Plaintiff's "ability to sustain attention, concentrate, and exert mental control is in the borderline range (WMI = 74)."  (TR 991.)   As the ALJ noted, Dr. Dickson specifically undercut the value of Plaintiff's WAIS-IV scores, cautioning that Plaintiff's "overall cognitive ability, as evaluated by the WAIS-IV, cannot easily be summarized because her verbal reasoning abilities are much better developed than her nonverbal reasoning abilities."  (TR 20.)  And ultimately, Dr. Dickson proposed no particular functional limitations related to attention and/or concentration.  (TR 984–85.)

The above analysis suggests that Plaintiff unduly emphasizes Dr. Dickson's summary of her WAIS-IV scores, which Dr. Dickson himself regarded with little significance.  Accordingly, substantial evidence supports the ALJ's analysis of Dr. Dickson's opinions.

### 2.  Reference to Pre-Onset Employment

Plaintiff asserts that the ALJ "tended to rely largely on the evidence preceding December 31, 2013, ignoring evidence that demonstrated the worsening" of her mental impairments. (Docket no. 20, p. 4.)  In particular Plaintiff contends that "[t]he ALJ . . . repeatedly stated that plaintiff's condition could not be as severe as she claimed, because she had been able to maintain employment as a data clerk until the plant closed down," while "fail[ing] to acknowledge that this employment took place between 2007 and 2009," before her alleged onset date.  (Docket no. 15, p. 21.)

Generally, the ALJ "only considers evidence from the alleged disability onset date through the date last insured." *Anderson v. Astrue*, No. 11-15636, 2012 WL 4867703, at *3 n. 1 (E.D. Mich. Sept. 18, 2012). However, consideration of pre-onset evidence is appropriate in certain cases, including when prior employment ends for non-medical reasons. *See Workman v. Comm'r*, 105 F. App'x 794, 801 (6th Cir. 2004) (observing that "[a]lthough [the plaintiff] alleges a disability onset date of June 30, 1998, the record indicates that this is the date that Workman's employer laid him off due to economic reasons"); *Coleman v. Comm'r*, No. 12-10809, 2013 WL 1316953, at *3–4 (E.D. Mich. Mar. 29, 2013) (endorsing the ALJ's consideration of evidence that "Plaintiff was employed full-time without limitation at a greenhouse from October 2008 to December 2008" and that "although Plaintiff claims he became disabled on December 31, 2008, Plaintiff ceased working because the greenhouse closed for the season, and not because of Plaintiff's psychological symptoms").

In his decision, the ALJ observed that "Dr. Dickson notes [that Plaintiff] has been able to work as a data entry clerk for two years before that job ended due to lack of work." (TR 20.) He also discounted Ms. LaBond's opinion that Plaintiff "often struggled maintaining her activities of daily living, and is dependent on others to meet most of her basic needs" because it was inconsistent with the evidence that Plaintiff "was able to maintain employment as a data entry clerk until her plant closed down." (TR 21.)

Under the circumstances of this case, the ALJ appropriately considered Plaintiff's pre-onset employment. As in the *Workman* and *Coleman* cases discussed above, Plaintiff's alleged onset date lacks a clear medical basis. Accordingly, the ALJ reasonably considered that Plaintiff's success in the data-entry position, which ended for non-medical reasons in the month of the alleged onset date, tended to discredit the allegation that she was totally disabled.

As the parties note, the ALJ concluded that Plaintiff could no longer meet the requirements of the data-entry job.  (TR 21.)  Plaintiff asserts that "it is ironic that the ALJ would use against plaintiff evidence that she years previously left a job for non-disability reasons that he himself now agrees she could not perform anyway."  (Docket no. 20, p. 8.)  However, the ALJ did not merely conclude that Plaintiff was not disabled because she had successfully performed the data-entry job.  Instead, he used Plaintiff's prior employment as a baseline to determine her present RFC, given some acknowledged worsening of her condition.  Notably, Dr. Dickson considered the data-entry job in a similar fashion.  (TR 991.)

Accordingly, the ALJ did not err by considering Plaintiff's pre-onset employment.

### 3.  *Ms. LaBond's Opinion*

Plaintiff asserts that the ALJ improperly gave only little weight to Christina LaBond's opinion that Plaintiff "has consistently demonstrated unstable interpersonal relationships," "often struggles maintaining her activities of daily living," and "is dependent on others to meet most of her basic needs."  (Docket no. 15., pp. 24–25.)

The ALJ discredited Ms. LaBond's opinion because it was "inconsistent with the evidence of record," including the evidence that Plaintiff "was able to maintain employment as a data entry clerk until her plant closed down" and "the examinations and medical opinions of medical professionals (e.g., Exhibit 23F [i.e., Dr. Dickson's 2016 report])."  (TR 21.)  There is ample evidence in the record to support the ALJ's conclusion.  For example, Dr. Jyothi Nutakki observed in September of 2012 that Plaintiff was taking a course in medical billing and intended to look for a job.  (TR 646.)  Four months prior, Dr. Nutakki noted that Plaintiff was "doing very well," did not want any change in her medication, and "promised to start working out more as it would help her . . . if she finds a job where she needs to be active for the whole day."  (TR 647.)

And, as discussed above, Dr. Dickson opined that Plaintiff "would do best in work settings that are not stressful, and with tasks that involve more verbally related skills, including the data entry type activity she did successfully previously for 2 years until being laid off for lack of work." (TR 991.)

Perhaps more importantly, the vague nature of Ms. LaBond's opinions precludes them from being rationally translated into the particular functional limitations that comprise the RFC. Can someone who "often struggles maintaining her activities of daily living" nevertheless perform the requirements of a job?  The answer is not apparent from Ms. LaBond's report.  This problem is perfectly encapsulated by Plaintiff's argument that the RFC *is* consistent with Dr. LaBond's opinion that Plaintiff "consistently demonstrated unstable interpersonal relationships." (Docket no. 15, p. 24.)

## VI.    CONCLUSION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED**, that Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**, and that the case be dismissed in its entirety.

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and

11

Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response will be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response will address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 24, 2018              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: October 24, 2018              s/ Leanne Hosking
                                     Case Manager